## GRANT et al. v. ALONZO.
### No. 8361.

Court of Civil Appeals of Texas. San Antonio.
Feb. 19, 1930.

Rehearing Granted April 23, 1930. Rehearing
Overruled May 21, 1930.

H. L. Yates, of Brownsville, for plaintiffs
in error.

John A. Jones, of Brownsville, for defendant in error.

COBBS, J.

Defendant in error sued plaintiffs in error to recover the title to and possession of a garage on Lot No. 3 in block No. 71–A, in the city of Brownsville, Tex.

Substantially the facts are as follows: Albert Hill and wife, on the 3d day of April, 1926, entered into a written contract with R. H. Milton, who was to build a two-story residence and garage on said lot No. 3. The building was erected according to the plans and specifications, and accepted by Albert Hill and his wife, who executed a deed of trust for the benefit of R. H. Milton, conveying said lot No. 3, in block No. 71–A, and the improvements placed thereon by him, to W. G. McGarr, trustee. The deed of trust covered any improvements thereupon or to be placed thereupon.

In September, 1927, Dora Alonzo erected a building on said lot, consisting of a garage below and a residence above. Dora Alonzo had the oral permission of her daughter, Guadalupe Alonzo Hill, to erect said garage on said lot, but not of the husband, Albert Hill, for he was in the hospital at the time.

On April 16, 1928, the property was sold under the deed of trust to enforce the payment of the mechanic's lien notes, which Albert Hill and wife had not paid, and the property was bought in by John F. Grant.

On May 1, 1928, Dora Alonzo attempted to remove the said garage from the lot, and was prevented by John F. Grant, and she then brought this suit for the possession of the garage and for damages.

The case was tried without a jury, and the court, after hearing the evidence, rendered judgment for her.

The property was community property, and the claim was based upon the oral permission given her to erect the garage on the lot, and the right to remove the same therefrom. There was no written contract, nor any registration of any contract or permission, to give notice thereof, and Grant had no knowledge of such agreement when he purchased the property at foreclosure sale other than such notice that possession gave.

This improvement was in the nature of a fixture and built to and upon the ground, and, if it was a chattel, as claimed, there was nothing to give Grant notice that it was erected with the understanding that it could or should be removed therefrom.

We think the improvement was a quasi permanent one, and, if not, it was covered by the deed of trust, and became subject to the lien in the deed of trust and passed to Grant by the alleged sale. Fullenwider v. Longmoor, 73 Tex. 480, 11 S. W. 500; Lippencott v. York, 86 Tex. 276, 24 S. W. 275; Denison Lumber Co. v. Milburn (Tex. Civ. App.) 107 S. W. 1161.

We have not undertaken to discuss the question of permanent fixture as being involved in this case. It is clear it was a home in which the party resided, and ostensibly, as it stood on the premises, it appeared to be a permanent fixture. As it stood, it was an improvement thereon, and was covered by the deed of trust.

We think the judgment of the trial court was erroneous, and it is hereby reversed, and judgment is rendered for plaintiff in error.

## On Motion for Rehearing.

SMITH, J.

Lot 3 was owned by Hill and wife. They made a contract with Milton, who obligated himself to construct a dwelling house on the lot for the Hills, and took the usual builder's liens upon the lot and the improvements to be erected thereon under said contract. This was on April 3, 1926. On the same day Milton assigned the building contract and liens to John F. Grant, whose lumber concern undertook the construction of the improvements upon the Hills' lot in accordance with the building contract.

The Hills began paying off the debt to Grant, in installments, as provided in the contract. But Hill took sick, went to Dallas and into a hospital there, leaving his wife in charge of their premises. Mrs. Hill's mother, Dora Alonzo, lived in the same town, Brownsville. She asked and obtained permission of her daughter, Mrs. Hill, to build a combination garage and residence on the Hills' lot, so that she could rent out the one and live in the other. She testified, without contradiction, that she had the building constructed on the lot; that at the time she built it she "asked permission of both my daughter and her husband to build it"; that it was agreed between her daughter and herself that she would be allowed to move the building from the premises at any time she wanted to. In other words, the building was to be regarded as a chattel, and not a fixture attached to the realty. If Hill ever returned home after his mother-in-law built this house on the Hill premises, that fact is not shown. It does appear that he was afterwards divorced by his wife, and later died. It is inferable from the record that he was separated from his wife when the latter's mother built the combination garage and living quarters on the Hills' lot, and that he never returned to the marital domicile. His wife went to live with her mother upon the completion of the latter's humble quarters on the Hill lot. When the Hills ceased paying on their home, Grant foreclosed his lien thereon, and bought in the property. When Dora Alonzo heard of this foreclosure and sale, she began moving her house off the premises, but was stopped by Grant, who claimed the improvement as his own, upon the ground that it was a fixture upon his realty, and that he was an innocent purchaser at the foreclosure.

Grant was not an innocent purchaser. He had stepped into the shoes of the contractor and built the Hills' home, knew all that was going on throughout all the transactions, knew the house here in controversy was put up long after he acquired his lien on the premises, permitted it to be built at the expense of Mrs. Alonzo, and now emerges to claim the fruits of her endeavors.

█ Appellant's case rests upon the assumptions, first, that Hill did not join his wife in granting permission to Mrs. Alonzo to build the house on their lot; and, second, that Grant was an innocent purchaser of the premises, and had no knowledge of the agreement between the owners of the lot and Mrs. Alonzo that she might remove the structure at any time. Both these assumptions are without support. Mrs. Alonzo testified she asked both Mr. and Mrs. Hill for permission to place the structure on their lot, and, since she built it there and occupied it without objection from either of them, we must infer, as the trial court inferred, that she acted with their permission. It is certain that Mrs. Hill agreed, for all witnesses so testified, and it also appears that, as her husband had left her, and was soon afterwards divorced by her, she actually took up her residence with her mother in the very house now in controversy. From these circumstances it must be assumed that she had authority to bind the community when she gave permission to her mother to build upon and afterwards remove the house from the community property. Nor may it be assumed that Grant was an innocent purchaser of those premises, as has already been shown.

██ The case is really one of fact. The trial judge heard the evidence, resolved the issues against appellant, rendered judgment accordingly. His findings and conclusions are not expressed in writing, and hence every fact necessary to support the judgment will be presumed, unless it affirmatively appears that there was no testimony to support such finding. The equities of the case are all with appellee; none is with appellant. To take the property in controversy from appellee and give it to appellant would be harsh, unconscionable, wholly unjust, and we decline to render such judgment.

Appellee's motion for rehearing is granted, and the judgment will be affirmed.

COBBS, J., dissents; adheres to his opinion herein.